GALVESTON, H. & S A. RY. CO. v. MARTI.*
(No. 7072.)

(Court of Civil Appeals of Texas. Galveston. Feb. 1, 1916. Rehearing Denied Feb. 24, 1916.)

1. RAILROADS ☞400—INJURIES ON TRACK—QUESTION FOR JURY.

In a suit for injuries, charged to have been occasioned plaintiff by riding in his automobile at night into a freight car left by defendant railroad on its track in a street, in violation of a city ordinance, question whether the car was left standing for temporary work, in which case there was no violation of the ordinance, held for the jury under the evidence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. ☞400.]

2. RAILROADS ☞400—INJURIES ON TRACK—NEGLIGENCE PER SE.

It is not negligence per se for a railway company, which operates a team track located along one side of a street served with electric arc lights, to leave a freight car upon the track for unloading by the consignee, and, in the absence of notice that the car has been unloaded, to permit it to remain on the street during nighttime following the day the car is placed, where the usual time required for unloading is about 48 hours, and sometimes the work is completed in the night, since acts or omissions complained of as negligence cannot be said to be negligence per se, unless in violation of law, or so opposed to the dictates of common prudence that the minds of ordinary men cannot

differ as to the conclusions to be drawn therefrom.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. ☞400.]

3. TRIAL ☞139, 140, 143—QUESTIONS FOR JURY—CREDIBILITY OF WITNESSES.

It is the province of the jury to judge the credibility of witnesses and the weight to be given their testimony, and it is their duty to settle any conflict in the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332–335, 338–343, 365; Dec. Dig. ☞139, 140, 143.]

4. APPEAL AND ERROR ☞1002 — REVIEW — FINDING.

The finding of a jury upon conflicting evidence is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. ☞1002.]

5. RAILROADS ☞398—INJURY ON TRACK—INTOXICATION—SUFFICIENCY OF EVIDENCE.

In an action against a railroad for injuries to plaintiff, when he drove his automobile at night into a freight car left for unloading on a street track, evidence held sufficient to sustain the jury's finding that the plaintiff's injuries were not proximately caused by his own intoxication.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1358–1363; Dec. Dig. ☞398.]

6. RAILROADS ☞400—INJURIES ON TRACK—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.

In an action for injuries to plaintiff, when he drove his automobile into a freight car at night standing on a street track for unloading, questions whether plaintiff was guilty of contributory negligence by failing to use proper lights on his automobile, and by failing to keep a lookout on both sides of his course to enable him to avoid collisions, held for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. ☞400.]

7. DAMAGES ☞130 — PERSONAL INJURIES — EXCESSIVE VERDICT.

In an action for injuries, when plaintiff drove his automobile at night into a freight car standing on a street track for unloading, where plaintiff's injuries consisted of bruises, spraining of ribs, a cut through the lower lip, pains in abdomen, wrenched back, and traumatic pneumonia, confining him to his bed for two weeks under opiates, and to his room for a month, the injury being of a serious nature, perhaps permanent, and the period of full recovery likely to be 10 months or a year, where a reasonable charge for medical services was $50, and where plaintiff's wife nursed him at times, hiring other persons to do her housework, the usual fees for nursing in the neighborhood being $21 to $25 a week, while plaintiff's automobile was worth $1,000 before the accident, and after it only $200, verdict for plaintiff for $5,950 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357–367, 370; Dec. Dig. ☞130.]

8. TRIAL ☞133 — IMPROPER REMARKS OF COUNSEL—WITHDRAWAL—ACTION OF COURT.

In a personal injury case, where the remarks of plaintiff's counsel in presenting the case to the jury were not such as to inflame their passions or to arouse their prejudice against defendant, and where, upon objection, the remarks were promptly withdrawn by counsel, while the court promptly instructed the jury to disregard them, their making was harmless.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. ☞133.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.

**9. RAILROADS ☞355—RIGHTS IN STREET.**

A driver of an automobile in a city street had no greater right therein than a railroad, whose team track lay along the side.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1220–1227, 1235; Dec. Dig. ☞ 355.]

**10. TRIAL ☞118—ARGUMENT OF COUNSEL.**

In an action against a railroad for injuries, when plaintiff drove his automobile at night into a freight car placed upon defendant's team track in a street for unloading, the remark of plaintiff's counsel in argument that plaintiff had a greater right on the street than any corporation in the world was improper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 290–293; Dec. Dig. ☞118.]

**11. APPEAL AND ERROR ☞1031 — HARMLESS ERROR—IMPROPER REMARK OF COUNSEL.**

Where, upon objection, plaintiff's counsel stated that his remark in argument that plaintiff had a greater right on the street than any corporation in the world was incorrect, that plaintiff had no superior right on the street, and that he withdrew the remark, whereupon the court instructed the jury to disregard the statement, and that it was not the law, it must be presumed that the jury were not prejudicially influenced.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4038–4046; Dec. Dig. ☞ 1031.]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by F. J. Marti against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and W. T. Armstrong and Eugene A. Wilson, both of Galveston, for appellant. Marsene Johnson, Elmo Johnson, and Roy Johnson, all of Galveston, for appellee.

McMEANS, J.  F. J. Marti brought this suit against the Galveston, Harrisburg & San Antonio Railway Company to recover damages sustained by him on the night of July 28, 1914, resulting from a collision of an automobile, which he was driving, with a freight car of defendant which was standing upon the defendant's railway track laid upon Church street in the city of Galveston, alleged to have been left on said street by defendant in violation of an ordinance of said city, which reads as follows:

"That it shall be unlawful for any railroad company, or their agents and employés, to permit any loaded or empty freight car or cars to remain standing on any track laid on any street in the city of Galveston, except for the purpose of temporary switching or work. * * * "

Plaintiff alleged that, while driving his car in a westerly direction on Church street, a public street in the city of Galveston, at night, he met a horse-drawn vehicle, and in obedience to the rules of the road he turned to the right to avoid collision with the vehicle, and when he did so he collided with said freight car, which was left by defendant on said street unlighted and unguarded, and of the presence of which he did not know, and could not have known by the exercise of ordinary care. In the fourth paragraph of his petition he alleged, in substance, that the defendant was guilty of gross negligence in leaving and permitting to be left in Church street, at said time and place, said freight car, in violation of said ordinance, and that such negligence was the proximate cause of the injuries and damages sustained by him. Defendant pleaded that plaintiff's injuries directly resulted from his own negligence and contributory negligence in several particulars, which we do not deem necessary to specifically set out.

The case was submitted to a jury upon special issues, all of which were answered favorably to the plaintiff, and by their verdict they found plaintiff's damages to be $5,000 for personal injuries, $100 for medical expenses, $200 for nursing, and $700 for damages to plaintiff's automobile, aggregating $6,000. The plaintiff entered a remittitur of $50 on the item of medical expenses, whereupon the court entered judgment for plaintiff for $5,950, from which the defendant has appealed.

[1] By its first assignment of error the appellant complains that the court erred in not giving its special charge, which requested the court to peremptorily instruct the jury to return a verdict in its favor. The contention is, in effect, that the undisputed evidence shows that the freight car was left standing on the track for temporary work, and that there was therefore no violation of said ordinance in leaving it there in such circumstances. We think there was sufficient evidence introduced upon this issue to require its submission to the jury, and that therefore the court did not err in refusing to give the requested charge. It was shown that the car was placed on the track where the collision occurred on July 28, 1914; it was loaded with gravel and placed there for the purpose of being unloaded, and was unloaded on the same day. Usually the hands who did the unloading quit work at 6 o'clock in the afternoon, but sometimes the unloading was continued at night. If was undisputed that the car had been unloaded before plaintiff's automobile collided with it, which occurred about 11:30 o'clock at night. The car, however, was permitted by the defendant to remain standing upon the track after it was unloaded, and all through the night, and a part, at least, of the next day.

The ordinance forbade the defendant, its agents and employés, from permitting any freight car, such as this was, whether empty or loaded, to remain standing on its track on Church street, except for temporary switching or work. We think that under these facts it was a question for the jury to say whether the defendant had violated the ordinance. This question was propound-

ed to the jury, and they answered it in the affirmative. We are not now concerned with the question of whether there was any evidence to authorize the jury to answer the question negatively. The assignment is that the *undisputed* evidence shows that the car was permitted to stand in the street for temporary work. We think it is clear that it was *placed* there for "temporary work," but that the evidence justified ·the jury·in believing that it was permitted to remain standing on the street after the temporary work of unloading had been accomplished, and was therefore permitted by defendant to remain standing on the street for other than temporary switching or work. The assignment is overruled.

[2] The second assignment also complains of the refusal of the court to peremptorily instruct a verdict for defendant. The proposition under this assignment asserts that it is not negligence per se for a railway company, which operates a team track located along one side of a street served with electric arc lights, to leave a freight car upon said track for unloading by consignee, and, in the absence of notice that the car had been unloaded by the consignee, to permit same to remain on the street during nighttime following the day the car was so placed, where the usual time required for unloading such cars was about 48 hours, and sometimes the work of unloading is completed during the nighttime. It is conceded that the proposition is abstractly correct. Acts or omissions complained of as negligence can never be said to be negligence per se, unless in violation of law, or so opposed to the dictates of common prudence as that the minds of ordinary men cannot differ as to the conclusions to be drawn from them. But, conceding the correctness of the proposition, it furnishes no reason for sustaining the assignment. The plaintiff based his charge of negligence upon the violation by defendant of the ordinance hereinbefore quoted, and not upon the facts suggested by the proposition.

[3-5] The third assignment also complains of the refusal of the court to peremptorily instruct a verdict for the defendant; the contention being that the overwhelming preponderance of evidence shows that the plaintiff's inquiries were proximately caused by the fact that at the time of the collision he was under the influence of intoxicating liquor to such an extent as to impair his ability to operate his automobile with such care as a person of ordinary prudence and care would have operated it under similar circumstances, which condition proximately contributed to cause the injury. There was much testimony introduced on this issue. That offered by the defendant would have well warranted a finding by the jury that plaintiff, a short time before the collision, was drunk. The plaintiff testified, however, that he was not drunk, nor under the influence of intoxicating liquors at the time of the accident,

and, in this, was corroborated by his witness Wells, who was with him in the automobile when the collision occurred. The question was directly put to the jury, and they answered that he was not intoxicated at the time. The jury saw the witnesses and heard them testify, and it was their peculiar province to judge of their credibility and of the weight to be given to their testimony, and it was their duty to settle the conflict in the evidence; and having so settled it in favor of plaintiff, their finding in that regard is conclusive upon us. We cannot say that the finding of the jury upon this issue ́was so manifestly against the weight and preponderance of the testimony as to be clearly wrong. The assignment is overruled.

[6] Appellant's fourth assignment also complains of the refusal of the court to peremptorily instruct a verdict for defendant; the contention being that the proof that plaintiff failed to exercise ordinary care in operating his automobile so as to avoid a collision .was so overwhelming that the minds of ordinary persons could reach no other conclusion. By its first and second subjoined propositions it is asserted that it was plaintiff's duty, while driving at night in a street with which he was not familiar, to use such lights on his automobile as would enable him to keep a lookout, and that it was his duty to keep a lookout on both sides of his course, to enable him to avoid collision with nearby objects or persons occupying such portions of the street, in case of his being obliged to turn from his course.

The evidence was such as to justify a finding that, at about 11 :30 o'clock at night, plaintiff was driving his automobile on Church street, a public street in Galveston (with which he was unfamiliar), going westwardly, and running near the center of the street upon the track of a street railway, where the surface of the street was smooth. Just after reaching Thirty-First street, which crosses Church street at right angles, he discovered a horse-drawn vehicle approaching him, and this vehicle was also near the center of the street. When the two came close to each other, both, in obedience to the rules of the road, turned to the right, and when plaintiff saw that he had turned far enough to avoid contact with the vehicle, and just as he was turning back into the course he had been traveling, he saw the freight car, which he had not before seen, about 10 feet in front of him and too close to avoid a collision, although he used the emergency brake in an effort to stop, and the collision necessarily followed. Plaintiff's automobile was equipped with presto lights, which threw a bright light ahead and straight in front of the automobile, and the course of his progress being to the left of the car its rays were thrown down the street ahead of him, and not upon the car, which was to his right. There is nothing to indicate that the lights on the ·automobile were not the usual and ordinary

kind, or that they were unfit or insufficient for the purpose of street travel at night. According to the plaintiff's testimony, he was driving at a speed not to exceed 8 or 10 miles per hour and well within the speed limits prescribed by both the state laws and the city ordinances. He, being unfamiliar with the street, did not know that there was a railroad track upon it, nor that freight cars would likely be standing upon it. He also testified that he was looking ahead, and did observe the approaching vehicle, which he avoided by turning out of his course. We think, in view of these facts, the court did not err in refusing to instruct a verdict for defendant for the reasons stated in the assignment, and the assignment is overruled.

The fifth, sixth, and eighth assignments, all of which further complain of the refusal of the court to instruct a verdict for defendant, must be overruled. There is nothing that leads us to the conclusion that the failure of plaintiff to drive on the right-hand side of the street, under the facts of this case, was negligence upon the part of plaintiff which caused or contributed to bring about his injuries. Nor can we say that the evidence so overwhelmingly established that plaintiff at the time of the collision was driving at a speed in excess of the limits prescribed by the state law or the city ordinances as to have justified the trial court in taking that question from the jury.

[7] The ninth assignment complains that the verdict is excessive. This assignment we must also overrule. Dr. Murray, the plaintiff's physician, testified that he made an examination of plaintiff's injuries; that they consisted of a mass bruise of the right side, spraining of five ribs at their junction with the breast bone, a complete cut through and through of the lower lip, continuous pains in the abdomen, wrenched back, mass bruise of face, and traumatic pneumonia; that he was confined to his bed from July 30 to August 14, 1914; that he kept patient under opiates for pain and antiseptics for lip, and applied usual treatment for other conditions; was confined to his bed and room for a month and not able to attend to his ordinary business; that from subjective symptoms, such as insomnia, vertigo, headache, and pains in the back, he concluded that the injury is of a very serious nature, perhaps permanent, and that plaintiff was still under his care; that he thought plaintiff's period of convalescence will be wholly controlled by his recuperative powers, and, judging from the present improvement in his condition, that he should recover in about 10 months or a year from the date his testimony was given. Plaintiff, among other things, testified that ever since the accident he had been suffering in his abdomen, becomes dizzy after walking some distance, has constant headaches, which he never before had, and

183 S.W.—54

has been spitting up blood ever since he was hurt.

Plaintiff's wife testified that plaintiff had pains, and that he would choke, and blood would come up in his throat; that he was bruised, spit up blood, and had pains in his side and head. Dr. Murray testified that a reasonable charge for his services to plaintiff was $50. The jury found for him in the sum of $100 for medical expenses, and the plaintiff entered a remittitur of one-half of this amount, which reduced the award for this item to $50. It was shown that plaintiff's wife nursed him from the time of his injury to the time of the trial, at times hiring other persons to perform her domestic duties, in order to devote her time to her husband, and that the usual fees charged for nursing in Houston, where plaintiff lived, was from $21 to $25 a week. It was further shown that plaintiff's automobile just immediately before the accident was worth $1,000, and that just after it was worth only $200. Under the foregoing facts, it does not appear that the verdict, after the remittitur of $50 was entered, is excessive.

[8] The remarks of counsel in presenting plaintiff's case to the jury, complained of in appellant's eleventh, twelfth, fourteenth, and fifteenth assignments of error, even if improper, were not such as to inflame the passion or arouse the prejudice of the jury against defendant, and in view of their prompt withdrawal by counsel, when objection was made, and of the court's prompt instruction to the jury to disregard such remarks, it is inconceivable that defendant was injured thereby. The assignments are overruled.

[9-11] The remark of plaintiff's counsel, to the effect that plaintiff had a greater right on the street than any corporation in the world, was improper as a matter of argument and incorrect as a proposition of law; but, upon objection thereto being made, plaintiff's counsel stated that his statement was incorrect, and further that plaintiff had no superior right on the street, and withdrew the remark, and thereupon the court instructed the jury to disregard the statement, and instructed them that the statement was not the law. We must presume that, after being so admonished, the jury were not prejudicially influenced by the remark against appellant.

We shall not discuss in detail the appellant's other assignments of error, there being 55 in all. Many of them have been disposed of by the disposition we have made of the assignments hereinbefore discussed. The others have been carefully examined by us, and we are of the opinion that none of them point out reversible error. We think that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.