**LANE et ux. v. CUNNINGHAM et ux.**
**No. 841.**

Court of Civil Appeals of Texas. Eastland.
May 8, 1931.

Rehearing Denied May 29, 1931.

Critz & Woodward and Baker & Baker, all of Coleman, for appellants.

Walters & Walker, of San Saba, for appellees.

HICKMAN, C. J.

On the 14th day of October, 1929, appellees, Robert Cunningham and wife, Mamie E. Cunningham, the owners of 98 acres of incumbered land in Callahan county, entered into a contract in writing with appellant J. T. Lane, the owner of a lease on a hotel in San Saba, known as Hotel San Saba, and the incumbered furniture and fixtures situated therein, by the terms of which contract it was agreed that Cunningham and wife would exchange their interest in the land for Lane's lease and his interest in the furniture and fixtures. The contract provided that possession should be given on the 1st day of November thereafter. Lane executed and delivered to Cunningham an assignment of the lease and bill of sale to the furniture and fixtures, and Cunningham and wife executed a warranty deed to Lane to the land, all in accordance with the contract. Each party assumed the indebtedness against the property received by him in the exchange. The Cunninghams took possession of the hotel on November 1st, and operated same at a loss until some time in December, when they abandoned it and moved back and took possession of the house on the farm which they had deeded to Lane. The deed from Cunningham and wife to Lane was placed of record, and there was also placed of record a deed from Lane to his wife, Juanita Lane, conveying the Callahan county farm to her.

This suit was instituted by Cunningham and wife against Lane and wife to rescind the trade, cancel their deed to the Callahan county land, and cancel the deed from Lane to his wife. Their petition contained the statutory allegations of an action in trespass to try title. Following these allegations, they pleaded their case specially. They alleged: (1) That their deed to Lane had never been delivered with the intention of passing title; (2) that the contract and deed were procured by fraud in several particulars hereinafter noticed;

and (3) that the deed from Lane to his wife was without consideration and made for the purpose of hindering, delaying, and defrauding his creditors. Their prayer was for the title and possession of the Callahan county land, for a writ of restitution, for rents, damages, and costs of suit, and for judgment canceling the deed executed by Lane to his wife. They also prayed for general relief.

Appellants answered by a general demurrer, special exception, and general denial. Following their general denial, they set up a cross-action which contained the statutory allegations of a suit in trespass to try title to the Callahan county land. The case was submitted to a jury on special issues. In answer to the issues, the jury found that the possession of the deed from Cunningham and wife to Lane was not delivered with the intention on the part of the Cunninghams of passing the title to the land. The jury also found in favor of the Cunninghams on all the fraud issues submitted. Upon this verdict judgment was rendered in their favor against Lane and wife for the title and possession of the Callahan county land, for a cancellation of the two deeds, the one from them to Lane, and the one from Lane to his wife. The judgment decreed that the Lanes take nothing by their cross-action and adjudged the costs against them. From this judgment this appeal is perfected.

The specific fraudulent representations found by the jury to have been made by Lane to the Cunninghams were: (a) That all monthly installments of rent due the San Saba Hotel Company had been paid up to the 1st of November, 1929; (b) that Lane had been making enough out of the hotel at San Saba to pay the running expenses, including the amounts due each month to the Texas Hotel Supply Company, and the rent on the hotel; (c) that Jess Heslep, Lane's hotel manager and representative, represented that two young men occupied one of the rooms of the hotel at San Saba and paid $30 each per month therefor; (d) that two young men who were occupying another room at the hotel were paying $35 each per month therefor; (e) that the room occupied by the coffee shop in the hotel brought $110 per month rent; (f) that the large room situated on the ground floor at the southeast corner of the building had been leased for a drug store at a monthly rental of $110, beginning November 1, 1929; (g) that Lane represented that out of the proceeds derived from operating the hotel business he had been paying all operating expenses, including monthly rental of $600 due the San Saba Hotel Company, and the monthly installments due the Texas Hotel Supply Company on the furniture and fixtures, and had a fair profit left over, from June 1, 1928, up to the time of the trade, with the exception of one or two months.

Each and all of these representations were found by the jury to have been false, and to have been believed and relied upon by the Cunninghams in entering into the contract. Each issue submitted was properly pleaded and supported by testimony.

In various ways appellants present the question that rescission should not have been decreed for the reason that it was neither pleaded nor proved that appellees were damaged by the fraud. At a prior day of this term we rendered an opinion herein sustaining this contention of appellants, and entered our order reversing and remanding the cause. Our decision was based alone upon our construction of the opinion of the Commission of Appeals, adopted by the Supreme Court, in the case of Bryant v. Vaughn, 33 S.W.(2d) 729. Since our opinion was written, there has been published an opinion by the commission adopted by the Supreme Court, in the case of Sibley v. Southland Life Ins. Co., 36 S. W.(2d) 145. That opinion has caused us carefully to review the entire question. In our former opinion we construed the holding in Bryant v. Vaughn to be that, in a suit for the rescission of an exchange agreement for fraud in its procurement, the complaining party must allege and prove that the value of the property received by him was less than the value of that parted with, or, in other words, that the rule for measuring the damage is that announced in the case of George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456. In the Sibley Case, supra, it was held that, in cases coming within the purview of article 4004, R. S. 1925, the rule there provided for measuring the damage, viz., the difference between the value as represented and the value in the condition delivered, superseded the rule in George v. Hesse. Of course, the two opinions should not be so construed as to place them in conflict with each other. No semblance of conflict exists if the case of Bryant v. Vaughn is construed to hold that the defrauded party in that case failed to bring herself within either rule. That opinion seems not to have indicated which rule was applicable, but to have held that by neither her pleading nor her proof did Mrs. Vaughn bring her case within either. Had she pleaded and proved damage under the rule of article 4004, rescission would surely not have been denied her.

These cases and the case of Russell v. Industrial Transp. Co., 113 Tex. 441, 251 S. W. 1034, 258 S. W. 462, 51 A. L. R. 1, well establish two rules governing an action for the rescission of a contract of exchange procured by deceit or fraud when the transaction pertains to real estate or stocks, viz.: (1) The complaining party must allege and prove that he has sustained damage. (2) The rule for measuring the damage is the differ-

ence between the value as represented and the value in the condition delivered, as provided in article 4004, R. S. 1925. There cannot be two rules for measuring the damage, one applicable when rescission is sought and the other applicable when the relief sought is a money judgment for damage. The only showing of damage required in either case is that the property received is worth an amount substantially less than it would have been had it been as represented. It is not necessary that proof be offered showing the difference between the values of that parted with and that received.

■ Testing the pleadings and evidence in this case by these rules, we find abundant support for the conclusion that appellees both pleaded and proved damage on account of the fraudulent representations. Clearly the hotel lease and fixtures would have had greater value had the representations above set out with regard to the income derived from the rent of various rooms been true. The fraudulent representation that all rent had been paid up to and including November 1st had a material bearing upon the value of the property received. The undisputed facts disclose that there was then due on back rent $800, which was by law secured by a landlord's lien upon the furniture and fixtures, and that, because thereof, suit was filed in December and the property sequestered and sold, thus wiping out all the value of that received by appellees in the exchange.

In the case of Russell v. Industrial Transp. Co., supra, Justice Pearson quotes with approval from Black on Rescission, § 37, as follows: "If damage is shown, the extent of the injury occasioned by the fraud will not be inquired into in a suit to rescind the contract. And the injury need not be accurately measurable in money, but it is sufficient if it is of a pecuniary nature."

In the same opinion this language is used: "Of course, as is pointed out in Elliott and others, the word 'damage' should not be restricted to a monetary loss; that is, it need not be measured in money, but it is sufficient if the defrauded party has been induced to incur legal liabilities or obligations different from that represented or contracted for. In an action for rescission, the amount of the damage is immaterial, provided it is substantial."

The evidence does not disclose that the Cunninghams assumed the $800 obligation for rents, but does disclose that the property received by them had an incumbrance of $800 thereon in addition to that represented, and it cannot be questioned that incumbered property is worth less than the same property unincumbered.

It is our conclusion that appellees both pleaded and proved that they suffered substantial damage under the correct rule applicable thereto in this transaction, and all assignments and propositions relating to the subject of damage are overruled.

By various assignments and propositions questions are presented as to the correctness of the issue submitted as to the delivery of the deed from the Cunninghams to Lane, and the admissibility of certain testimony introduced with reference thereto. We shall not write upon these questions for the reason that, should they be sustained, reversal would not follow. Appellees were entitled to the decree of cancellation on account of the fraud, regardless of whether their deed had been delivered.

■ The assignment that the court erred in admitting parol testimony of the true consideration agreed upon by the parties is overruled. The general rule, that recitals in a deed as to consideration are not conclusive, has been many times announced and followed by the courts of our state. A number of the Texas authorities are cited in 22 C. F. p. 1157, § 1555, under note 53.

■ The only remaining assignment which we shall discuss is that relating to the argument of counsel. The bill of exceptions relating thereto discloses that G. A. Walters, one of the attorneys representing the appellees, in his address to the jury employed the following language: "Gentlemen, I do not believe you will return a verdict in favor of the defendants and turn these old people out of their home in their old age, turning them out on the commons with no place to go and no place to live, and take away from them the fruit of their lifetime of saving and toil."

Appellant excepted and objected to this argument at the time it was made, whereupon the court instructed the jury verbally not to consider it. No written instruction with reference thereto was given. The bill of exceptions preserving this matter does not disclose, either that there was no evidence to justify the argument, or that there was no argument on the part of the opposing counsel to provoke it. It has long been the rule that such a bill of exceptions presents no error. This court has had occasion to follow the rule in the cases of Texas Pacific Coal & Oil Co. v. Grabner, 10 S.W.(2d) 441; Oilbelt Motor Co. v. Hinton, 11 S.W.(2d) 338; Thompson v. Caldwell, 22 S.W.(2d) 720; and West Texas Utilities Co. v. Renner, 32 S.W.(2d) 264. In the last case cited the Supreme Court has granted a writ of error upon an assignment complaining of this particular holding by us. We have observed that there have been many recent decisions by Courts of Civil Appeals since our holding in the Renner Case following the same rule. The granting of the writ of error on this point, however, presents a question as to whether the Supreme Court will announce a different rule. We should

therefore hesitate, under the circumstances, to dispose of this question on that basis alone.

While we do not commend the character of argument disclosed in this bill, yet we do not believe it should work a reversal of the judgment. There is no suggestion therein as to the answer to be given to any particular issue. The jury is presumed not to know the effect of its answers. The statements are general and the court promptly withdrew them from the jury. We recognize that an argument may be so prejudicial that the effect thereof may not be removed by an instruction from the court. But we do not believe that the argument here complained of is so vicious and prejudicial in its nature as that the effect thereof, if any, upon the jury, was not removed by the court's instruction. Hubb Diggs Co. v. Bell, 116 Tex. 427, 293 S. W. 808; C. C. Slaughter Cattle Co. v. Pastrana (Tex. Civ. App.) 217 S. W. 749; El Paso Elec. Ry. Co. v. Terrazas (Tex. Civ. App.) 208 S. W. 387; Galveston, H. & S. A. Ry. Co. v. Marti (Tex. Civ. App.) 183 S. W. 846; San Antonio Traction Co. v. Roberts (Tex. Civ. App.) 152 S. W. 455.

Another reason affirmatively appears for holding that this argument was harmless. The language objected to was practically the same as that employed by Mrs. Cunningham while on the witness stand. No objection was made to the testimony, and all the injury, if any, which could arise from the improper argument had already been inflicted without objection.

It is our order that the motion for rehearing be granted; that the judgment heretofore entered herein, reversing and remanding this cause, be set aside; that the original opinion herein be withdrawn and this opinion be substituted therefor; and that the judgment of the trial court be in all things affirmed.